1

2

3

4

5

6

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

7

8

9

10

11

12

13

| | |
|---|---|
| **ERICK EFRAIN ALEMAN,** )<br><br>**Plaintiff,** )<br>**v.** )<br> )<br>**CITY OF BAKERSFIELD, ALLEN** )<br>**RONK, TIMOTHY BERCHTOLD, and** )<br>**DOES 1 to 100, inclusive,** )<br> )<br>**Defendants.** )<br>_____ ) | 1:11-CV-2006  AWI JLT<br><br>**ORDER ON DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

14

15     This case arises from a confrontation between members of the Bakersfield Police

16   Department and Plaintiff Erick Aleman ("Aleman").  Aleman has brought suit under 42 U.S.C.

17   § 1983 against the City of Bakersfield ("the City") and Bakersfield police officers Allen Ronk

18   ("Ronk") and Timothy Berchtold ("Berchtold").  Aleman alleges violations of the Fourth

19   Amendment, conspiracy, malicious prosecution, and the Equal Protection clause.  Defendants

20   move for summary judgment on the second, third, fourth, and fifth causes of action, as well as all

21   *Monell* claims.  For the reasons that follow, the motion will be granted in part and denied in part.

22

23                              **FACTUAL BACKGROUND**[1]

24     On December 18, 2009, at approximately 11:07 a.m., Bakersfield Police Department

25   ("BPD") Officers Ronk and Berchtold were on patrol in a marked BPD vehicle and in full police

26   uniform.  JUMF 1.  Ronk and Berchtold observed a Lincoln Navigator that had its front driver's

27

28     [1]"JUMF" refers to the parties' Joint Undisputed Material Facts, "DUMF" refers to Defendants' Undisputed
Material Facts, and "PUMF" refers to Plaintiff's Undisputed Material Facts.  Also, both sides have made various
evidentiary objections.  To the extent that the Court relies on evidence to which an objection has been made, the
objection shall be deemed overruled.

1    side window tinted in violation of California Vehicle Code § 26708(a)(1).  JUMF 2.  The

2    Navigator was stopped at an intersection and remained stopped for about 15 seconds.  See

3    Motion To Suppress at 4:10-19.  Several weeks prior to December 2009, there had been a large

4    number of burglaries and other crimes committed during the morning hours, of which the officers

5    were aware.  See DUMF 2.[2]  Based on both officers' knowledge and experience, they were aware

6    that burglars would "case" a given area for potential targets prior to committing the actual

7    burglary.  See DUMF 3.  The officers believed that the Navigator may have been "casing" the

8    area for potential burglary targets because the Navigator was stopped for about 15 seconds,

9    which was an abnormal amount of time in that there was no traffic in to which the Navigator

10   would have to yield.  See DUMF 4.[3]  Because of the tinting on the window, the officers could not

11   see the driver and thus, did not know the driver's race or gender.  See DUMF 5.[4]  The officers

12   followed the Navigator in an attempt to initiate a traffic stop.  JUMF 3.  The Navigator proceeded

13   driving until it turned into the driveway of a house at 3301 Mission Hills Court.  JUMF 4.

14        Ronk positioned his patrol vehicle behind the Navigator.  JUMF 5.  Ronk then activated

15   the police vehicles overhead red and blue lights, but did not activate the siren.  See DUMF 6;

16   PUMF 3.   A records check of the vehicle's registration revealed that 3301 Mission Hills Court

17   was not the address to which the vehicle was registered, rather the Navigator was registered to

18   Aleman at 2901 University Ave.  See JUMF 6.

19        Ronk then observed the driver, later identified as Aleman, exit the driver's side door of

20

21         [2]Aleman disputes this DUMF by arguing that Ronk cannot describe a specific incident to support the
     assertion that there had been a large number of burglaries, and that Ronk stated that he needed to perform further
22   research about the burglaries.  See PRDUMF 2.  Aleman relies exclusively on section of Ronk's testimony during a
     motion to suppress hearing.  See id.  However, DUMF 2 is supported by the declarations of both Ronk and
23   Berchtold.  There is nothing that disputes Berchtold's knowledge of burglaries.  As to Ronk, the cited portion of his
     testimony does not include a question that asked him to describe the burglaries.  See MTS 28:6-29:9.  Further,
24   Ronk's reference to "research" was in response to a question that asked what information he possessed that the driver
     of the Navigator had committed a crime.  See MTS 29:2-9.  Given the questions that were actually asked, and given
25   Berchtold's uncontradicted declaration, DUMF 2 is undisputed.

26         [3]It appears that the intersection is controlled by a stop sign.  See Lichten Dec. at 5.  Aleman's police
     procedures expert, Richard Lichten, has declared that the California Vehicle Code does not contain a time limit for
27   motorists to remain at a stop sign.  See id.

28         [4]Aleman objects that the officers could tell his race once he exited his vehicle.  See PRDUMF 5.  However,
     in context, this DUMF is clearly referring to the time period prior to Aleman's exit.  DUMF 5 is undisputed.

the vehicle and proceed towards the residence.  JUMF 7.  Ronk and Berchtold exited their

vehicle.  See DUMF 7.  Aleman was wearing a baggy jacket with a loose fitting shirt and baggy

athletic pants, and the officers were concerned that Aleman could conceal weapons on his

person.  DUMF 8.  Aleman did not know that the officers were present, and the officers did not

yell at Aleman to stop.[5]  See Aleman Depo. 22:11-20, 26:1-6.  Aleman continued to walk to the

front door, opened the front door, shut the door, and said hello to his friends inside.  See Aleman

Depo. 12:6-11, 26:7-9.

   The officers declare that they did not know if Aleman knew the occupants of the house,

and believed that Aleman may have been fleeing inside to create a hostage situation.  See DUMF

13.  Berchtold forced open/broke down the front door and entered the residence.  See PUMF 8;

DUMF 14; Aleman Depo. 27:2-14.  The front door hit Aleman and knocked him down.  See

Aleman Depo. 12:12-13.  Both officers entered and began to hit Aleman with their fists and

batons, which had the effect of knocking or dragging Aleman down the hallway of the house and

into a bathroom.[6]  See Aleman Depo. 12:12-13:16, 29:22-30:7; see also Motion To Suppress at

71:4-16 (testimony of Maria Subia).  After the struggle ended, Aleman was handcuffed and

arrested.  See Berchtold Dec. ¶ 15; Ronk Dec. ¶ 15.  Neither officer had met, had previous

contact, or had even heard of Aleman prior to this incident.  JUMF 11.  Both officers declare that

none of their actions were racially motivated.  See Ronk Dec. ¶ 6; Berchtold Dec. ¶ 6.

   Aleman was placed in the back of the officers' patrol vehicle and taken to the county jail.

See JUMF 8; PUMF 11.  In the patrol car, Ronk advised Aleman of his *Miranda* rights and,

when Ronk spoke to Aleman, Ronk noticed that Aleman had red watery eyes, dilated pupils,

---

[5]The officers contend that Berchtold repeatedly yelled for Aleman to stop, Aleman looked over and saw the
officers, but instead of stopping, Aleman ran to the front door, ran inside the house, and then shut the door.  See
DUMF's 7, 9, 10, 11, 12.  Aleman's version of events is to the contrary.  In his deposition, Aleman testified that
there was not an indication to him that the officers were trying to stop him, and that the officer's statements that they
yelled at him to stop were "lies."  See Aleman Depo. 26:11-20.  Because Aleman is the non-moving party in this
summary judgment motion, his version of events is credited.  See Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir.
2010).  Therefore, for purposes of this motion, the officers said nothing to Aleman before he entered the residence.

[6]The officers contend that, as soon as they entered the residence, Aleman ran down the hallway towards
bedrooms, the officers yelled for Aleman to stop, Aleman refused to stop, and a struggle then ensued.  See DUMF's
14, 15.  Aleman's version of events is to the contrary.  Again, because he is the non-moving party, Aleman's version
of events is credited.  See Narayan, 616 F.3d at 899.

slight bruxism, shaking extremities, and a strong odor of marijuana about him.  See DUMF 17;[7]
Ronk Dec. ¶¶ 16, 17.  Ronk found a clear plastic bag containing about 8 grams of marijuana in
the back of his vehicle where Aleman had been sitting.  JUMF 9.  Aleman admits that this
marijuana belonged to him.  See JUMF 10.  Aleman was booked for violations of Penal Code
§ 69 (resisting an officer with violence), Health & Safety Code §§ 11357 (possession of
marijuana) and 11550 (under the influence of a controlled substance), and Vehicle Code §§
23152(a) (driving under the influence) and 26708(a)(1) (window tinting).  DUMF 18.

Ronk completed an offense report, which was approved by supervisory personnel at BPD
and submitted to the Kern County District Attorney's Office.  PUMF 12.  Neither Ronk nor
Berchtold had any influence on anyone from the District Attorney's Office about whether to
pursue criminal charges against Aleman.  See DUMF 24.[8]  Charges were then brought against
Aleman.  See Aleman Depo. 14:7-9.  However, a motion to suppress was filed and granted, and
the charges were thereafter dismissed.  See PUMF 13; Aleman Depo. 14:10-15:8.

## SUMMARY JUDGMENT FRAMEWORK

Summary judgment is appropriate when it is demonstrated that there exists no genuine
issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v.
American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary
judgment bears the initial burden of informing the court of the basis for its motion and of
identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an
absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986);

---

[7]Aleman disputes this DUMF by arguing that he had just been beaten, which could explain these
symptoms/observations.  However, that there may be multiple explanations for outward symptoms does not dispute
that the symptoms exist.  DUMF 17 is undisputed.

[8]Aleman disputes this fact by arguing that the officers acted together and without probable cause, and Ronk
wrote a dishonest report.  The Court interprets DUMF 24 as meaning neither officers spoke to anyone at the District
Attorney's Office for the purpose of encouraging a prosecution.  Cf. Awabdy v. City of Adelanto, 368 F.3d 1062,
1066 (9th Cir. 2004) (holding that presumption of prosecutorial independence can be overcome by showing that a
defendant "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed
exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in
causing the initiation of legal proceedings.").  So reading DUMF 24, it is undisputed.

4

1  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it

2  might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby,

3  Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

4  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to

5  return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Freecycle Sunnyvale v.

6  Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

7         Where the moving party will have the burden of proof on an issue at trial, the movant

8  must affirmatively demonstrate that no reasonable trier of fact could find other than for the

9  movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of

10  proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential

11  element of the non-moving party's claim or by merely pointing out that there is an absence of

12  evidence to support an essential element of the non-moving party's claim.  See James River Ins.

13  Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984.

14  If a moving party fails to carry its burden of production, then "the non-moving party has no

15  obligation to produce anything, even if the non-moving party would have the ultimate burden of

16  persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir.

17  2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to

18  establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus.

19  Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103.  The

20  opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must

21  instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for

22  trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

23         The opposing party's evidence is to be believed, and all justifiable inferences that may be

24  drawn from the facts placed before the court must be drawn in favor of the opposing party.  See

25  Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895,

26  899 (9th Cir. 2010).  While a "justifiable inference" need not be the most likely or the most

27  persuasive inference, a "justifiable inference" must be rational or reasonable.  See Narayan, 616

28  F.3d at 899.  Inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'"  Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  Nissan Fire, 210 F.3d at 1103.

## DEFENDANTS' MOTION

### 1.      Second Cause of Action – 4th Amendment – Arrest Without Probable Cause

*Defendants' Argument*

The officers argue that they had probable cause to effect a traffic stop based on the tinting on Aleman's car window.  Even Aleman's expert agrees that the officers were justified in attempting to stop the Navigator.  Aleman pulled into the driveway of a home that did not belong to him, got out, and entered the home despite repeated orders to stop and the police vehicle's activated overhead lights.  The officers contend that they perceived that Aleman was trying to flee from them.  Because Aleman was perceived to be fleeing into a home that did not belong to him, it was appropriate to follow Aleman inside in an attempt to arrest him.  Further, the officers' contact with Aleman made it apparent that Aleman was under the influence of marijuana, and the officers found a bag of marijuana in their vehicle that belonged to Aleman.  Under the totality of the circumstances, the officers had probable cause to arrest.

*Plaintiff's Opposition*

Aleman argues that there are material facts that show Aleman was arrested without probable cause.  At the time the officers pursued him into the home, the only thing the officers

actually knew was that the Navigator's windows were tinted.  However, the tinting violation is an unarrestable offense.  All of the officers' other beliefs were based on unsupported speculation.  Once inside the home, the officers attacked and beat him into submission.  The officers then arrested him for violation of Penal Code § 148, resisting arrest.  However, at no point did he resist or delay the officers in the lawful performance of their duties.

*Legal Standards*

"The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest."  Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009); see Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004.  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."  Rodis v. City & County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009); John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008).  Courts look to "the totality of the circumstances known to the arresting officers, to determine if a prudent person would have concluded there was a fair probability that the defendant had committed a crime."  John, 515 F.3d at 940; see Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006).  The facts and circumstances that are analyzed "are those that were known to the officer at the time of the arrest."  Rosenbaum v. Washoe Cnty, 663 F.3d 1073, 1076 (9th Cir. 2011).  Facts learned or evidence obtained as a result of an arrest cannot be used to support probable cause unless they were known to the officer at the moment the arrest was made.  Allen v. City of Portland, 73 F.3d 232, 236 (9th Cir. 1996).  "[P]robable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause."  Ewing v. City of Stockton, 588 F.3d 1218, 1230 n.19 (9th Cir. 2009); see Torres v. City of Los Angeles, 548 F.3d 1197, 1207 (9th Cir. 2008).

*Discussion*

As an initial matter, the officers cannot establish probable cause based on facts that were discovered after Aleman's arrest.  See Allen, 73 F.3d at 236.  Aleman was arrested at the time the struggle ended and he was handcuffed.  See Berchtold Dec. ¶ 18; Ronk Dec. ¶ 15; see also

United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1991); Perez-Morciglio v. Las Vegas Metro. Police Dep't, 820 F.Supp.2d 1111, 1120 (D. Nev. 2011).  As a result, the officers cannot rely on either Aleman's appearance while he was being transported to the jail or on the marijuana that was found in the back of the patrol vehicle.  See Allen, 73 F.3d at 236.

Nevertheless, there is no dispute that the officers observed a violation of Vehicle Code § 26708(a)(1).[9]  See JUMF 2.  In other words, there is no dispute that the officers had probable cause to believe that Aleman was violating § 26708(a)(1) in their presence.[10]  See id.  Aleman argues that § 26708(a)(1) does not aid the officers because a violation of that section is an unarrestable or non-jailable offense.  The unstated premise in this argument is that probable cause for an unarrestable offense cannot justify an arrest.  The Court cannot agree.

The Supreme Court has held that, if "an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."  Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001).  This is so even when the state offense does not authorize an arrest and is punishable by a fine only.  Arkansas v. Sullivan, 532 U.S. 769, 771 (2001); Atwater, 532 U.S. at 323; Tebbens v. Mushol, 692 F.3d 807, 818 (7th Cir. 2012); Thomas v. City of Peoria, 580 F.3d 633, 638 (7th Cir. 2009).  Even though an officer may violate state law by making an arrest for an unarrestable offense, as long as the officer has probable cause to believe that an offense was committed, the officer's violation of state law will not in turn violate the Fourth Amendment.  Virginia v. Moore, 553 U.S. 164, 176-78 (2008); Martinez-Medina v. Holder, 673 F.3d 1029, 1036-37 (9th Cir. 2011); Thomas, 580 F.3d at 637 (". . . the fact that [an arrest] is not for an 'arrestable' offense does not make it unconstitutional.").

As applied to this case, Defendants do not challenge Aleman's assertion that Vehicle

---

[9] Vehicle Code § 26708(a)(1) reads: "A person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows."

[10] Aleman was booked for a variety of offenses, including Vehicle Code § 26708(a)(1).  However, because probable cause existed with respect to § 26708(a)(1), the invocation of other charges does not affect the validity of Aleman's arrest.  See Ewing, 588 F.3d at 1230 n.18; Torres, 548 F.3d at 1207; Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (". . . a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

1   Code § 26708 is an unarrestable offense.  While perhaps a very minor offense, a violation of

2   § 26708 is nevertheless criminal activity.  See People v. Rios, 2004 Cal.App.Unpub. LEXIS

3   4879, *17 (May 20, 2004);[11] cf. People v. Colbert, 157 Cal.App.4th 1068, 1072-73 (2007)

4   (finding reasonable suspicion of criminal activity were evidence indicated a violation of

5   § 26708); People v. White, 107 Cal.App.4th 636, 641-42 (2005) (finding no reasonable suspicion

6   of criminal activity where evidence did not indicate a violation of § 26708).  Because the parties

7   agree that the officers observed Aleman to be in violation of § 26708(a)(1), the officers had

8   probable cause to arrest Aleman.  Therefore, Aleman's arrest was not without probable cause and

9   did not constitute a false arrest under the Fourth Amendment.  See Moore, 553 U.S. at 176-78;

10  Arkansas, 532 U.S. at 771; Atwater, 532 U.S. at 323.  Summary judgment in favor of Defendants

11  on this claim is appropriate.[12]

12      **2.      Third Cause of Action – 14th Amendment – Racial Profiling**

13      *Defendants' Argument*

14          Defendants argue that there are no specific facts or statements upon which an inference of

15  discrimination can be based.  The Navigator's window was tinted, so the officers could not see

16  Aleman's race or gender at the time of the stop.  Aleman's discovery responses failed to put forth

17  any evidence whatsoever that any racial profiling occurred.  At most, Aleman can only point to

18  the different races of himself and the defendant officers, and that Berchtold shot and killed a

19  member of a minority race.  These facts do not indicate discrimination.

20      *Plaintiff's Opposition*

21          Aleman argues that it was only when he exited his vehicle that the officers began to

22  imagine that he was dangerous and possibly carrying weapons.  However, there was no evidence

23  that he was going to create a hostage situation, or that he was a criminal, or that he was armed, or

24  that he was violent.  This lack of information could lead a rational trier of fact to conclude that

---

25

26      [11] This Court may consider unpublished California state court decisions as persuasive authority.  See
    Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n.8 (9th Cir. 2003); Altman v. HO Sports
27  Co., 821 F.Supp.2d 1178, 1189 n.14 (E.D. Cal. 2011).

28      [12] The officers also move for qualified immunity on this claim.  However, because the Court has found no
    Fourth Amendment violation for false arrest, there is no need to proceed with qualified immunity.  See Saucier v.
    Katz, 533 U.S. 194, 200-02 (2001).

1    the officers were motivated by Aleman's Hispanic race.  Further, Ronk had been a member of the

2    BPD gang unit.  As of 2010, there were about 4,300 Hispanic street gang members in Kern

3    County.  This creates a reasonable inference that Ronk suspects young minority males of criminal

4    activity simply by virtue of their ethnic appearance.  Also, there were two citizen complaints filed

5    against these officers, one against Berchtold only and one against both Berchtold and Ronk.  The

6    citizen complaints were filed on December 10, 2009, and January 9, 2010, and were made by an

7    African American male and a Hispanic male, and both complaints deal with officers striking the

8    men with batons.  The conduct complained of in the citizen complaints occurred just before and

9    just after Aleman's encounter.  The record is sufficient to show that the officers acted with an

10   improper racial motivation.

11       *Legal Standard*

12       "The Equal Protection Clause of the Fourteenth Amendment commands that no State

13   shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

14   essentially a direction that all persons similarly situated should be treated alike."  Serrano v.

15   Francis, 345 F.3d 1071, 1082 (9th Cir. 2003).  A plaintiff must show that the "defendants acted

16   with an intent or purpose to discriminate against the plaintiff based upon membership in a

17   protected class."  Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Serrano, 345 F.3d at

18   1082.  That is, a plaintiff must show that the defendant "acted in a discriminatory manner and

19   that the discrimination was intentional."  Bingham v. City of Manhattan Beach, 341 F.3d 939,

20   948 (9th Cir. 2003).[13]  "Intentional discrimination means that a defendant acted at least in part

21   because of a plaintiff's protected status."  Serrano, 345 F.3d at 1082.  A plaintiff must identify the

22   relevant class to which he belongs.  See Furnace, 705 F.3d at 1030; Thornton v. City of St.

23   Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).  "The groups must be comprised of similarly

24   situated persons so that the factor motivating the alleged discrimination can be identified."

25   Furnace, 705 F.3d at 1030; Thornton, 425 F.3d at 1167.  In order to avoid summary judgment, a

26   plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a

27

28       [13]Overruled on other grounds as recognized by Edgerly v. City & County of San Francisco, 599 F.3d 946, 956 n.14 (9th Cir. 2010).

1   preponderance of the evidence that the decision was racially motivated." Serrano, 345 F.3d at

2   1082; Bingham, 341 F.3d at 949.  However, evidence that the plaintiff and the defendant are of a

3   different race, combined with a disagreement as to the reasonableness of the defendant's conduct

4   toward the plaintiff, is insufficient to show a violation of the Equal Protection Clause.  Bingham,

5   341 F.3d at 949; see also Thornton, 425 F.3d at 1167.

6        *Discussion*

7        Aleman contends that Ronk's prior membership in the BPD's gang unit could support an

8   inference of discrimination because there is a high number of young Hispanic male gang

9   members in Kern County.  However, Aleman cites no evidence that discusses Ronk's duties in,

10  experiences at, or statements or attitudes about the BPD gang unit.  There is nothing about

11  Ronk's actual time with the gang unit that in any way indicates discrimination.  Further, Aleman

12  unsurprisingly cites no authority that has accepted an officer's membership in a gang unit as

13  credible evidence of discrimination.  Gang violence is a serious societal and law enforcement

14  problem.  The Court will not hold that a peace officer's mere membership in a unit designed to

15  deal with this problem is evidence of discrimination.[14]

16       Aleman also cites *Price v. Kramer*, 200 F.3d 1237 (9th Cir. 2000) in support of his

17  assertion that the circumstances of this case reflect racial animus.  *Price* was a lawsuit brought by

18  two young African American men and one young Caucasian man for Fourth Amendment

19  violations stemming from a traffic stop.  The Ninth Circuit held that evidence of racial bias was

20  relevant to credibility and punitive damages.  See id. at 1251.  The Ninth Circuit found that the

21  nature of the questioning and statements of the officers to the African American men compared

22  to the Caucasian man, as well as the circumstances of the traffic offense, were probative of racial

23  bias.  See id.  The questions and statements to the Caucasian man dealt with whether and how

24  long he knew the African American men, and whether they were his friends.  See id.  The

25  questions to the African American men dealt with why they were in Torrance and that they were

26  not supposed to be there.  See id.  The circumstances of the traffic stop indicated that there was

27

28       [14]Additionally, the Court notes that this evidence would not relate to Berchtold because he was not a member of the BPD gang unit.

1    no justification for the stop, but the officers made a U-turn and followed plaintiffs' car when all

2    the officers could see were two African American men driving a car.  See id.

3          In this case, there is nothing comparable to the disparate questioning that occurred in

4    *Price*.  Instead, this case is closer to the portion of *Price* regarding the nature and reason for the

5    traffic stop.  Ronk and Berchtold speculated that Aleman might be attempting to create a hostage

6    situation after they saw him heading to the front door and saw that he was Hispanic.  However,

7    there are differences between this case and *Price*.  First, *Price* was not an Equal Protection case,

8    it was a Fourth Amendment case.  See Price, 200 F.3d at 1245-51; cf. Bingham, 341 F.3d at 49

9    n.9 (distinguishing Washington v. Lambert, 98 F.3d 1181 (9th Cir. 1996) in part on the basis that

10   *Washington* "was a Fourth Amendment case and not an Equal Protection case.").  Second, in

11   *Price*, there was absolutely no reason for the officers to make a U-turn, follow the plaintiffs' car,

12   or detain the three plaintiffs.  In this case, Ronk and Berchtold observed a violation of Vehicle

13   Code § 26708(a).  The decision to follow Aleman and to attempt a detention had nothing to do

14   with Aleman's race because the officers could not determine race due to the window tinting.

15   See DUMF 5.  It is true that the officers' concern about a hostage situation and their actions in

16   effectuating an arrest did not occur until after the officers saw Aleman's race.  However, at the

17   house, the officers' vehicle was behind the Navigator and the police vehicle's overhead lights

18   were on.  The officers inaccurately thought that Aleman was fleeing from them, and also

19   inaccurately concluded that Aleman's baggy clothes might be concealing a weapon.  Although

20   the officers' conclusions were wrong, the positioning of the car, the operation of the overhead

21   lights, and the pre-entry attempt to effectuate a stop are facts that at least bear on whether

22   Aleman was attempting to evade a detention.  These facts were not present in *Price* and are not

23   race related.

24          What Aleman's evidence shows is unreasonable conduct by the officers.  However,

25   *Bingham*, an Equal Protection case, makes clear that different races combined with a

26   disagreement over the reasonableness of conduct does not support an equal protection claim.  See

27   Bingham, 341 F.3d at 948-49 (finding no equal protection violation despite evidence that the

28   officer and complainant were different races, the officer saw the complainant's race while both

12

were crossing an intersection, the relevant city was predominantly white, and the officer did not

cite the complainant for the traffic offense that was allegedly observed); see also Thornton, 425

F.3d at 1167.  Aleman has cited no cases that hold unreasonable conduct by a police officer

against a person of a different race gives rise to an Equal Protection claim.  Given *Bingham*,

unreasonable conduct by an officer against an individual of a different race is not enough by itself

to show that the officer violated the Equal Protection clause.[15]

Aleman also submits portions of two internal investigative reports concerning two citizen

complaints.  One of the reports deals with conduct that occurred in January 2010.  The other

report deals with conduct that occurred in December 2009, one week prior to Aleman's

confrontation.

The January 2010 citizen complaint was filed by an African American man, Joe Johnson,

against Berchtold.  Johnson maintained that Berchtold used excessive force against him.  See

Thompson Dec. Ex. 6.  Berchtold and his partner Officer Amos were responding to a street fight.

See id.  Johnson indicated that he was not fighting and that Berchtold hit him with a baton

without reason.  See id.  Johnson's friend Hernandez stated that he and Johnson were not

involved in the fight, but they were confronted by a group of Hispanic men who were causing

problems, including pushing and shoving.  See id.  Hernandez stated that while he and the other

Hispanic men spoke to Amos, Hernandez heard a commotion between Johnson and Berchtold,

but did not know what was said or what proceeded the commotion.  See id.

The Court does not find the January 2010 incident report to be probative.  First, the report

provided is incomplete and does not include all relevant witness statements,[16] any analyses, or

any conclusions.  Without a complete report, a full analysis cannot be made.  Second, Aleman's

protected classification is his Hispanic race.  See Opposition at 16:1-2.  The 2010 citizen

complaint was filed by an African American, who is not within the relevant protected class.

Aleman does not explain how the 2010 incident with an African American shows that Berchtold

---

[15]"The touchstone of the Fourth Amendment is reasonableness."  Florida v. Jimeno, 500 U.S. 248, 252 (2006).  If unreasonable conduct alone were enough, then every Fourth Amendment claim involving parties of different races would likely also give rise to an Equal Protection claim.

[16]The statements of Berchtold, Amos, and Sgt. Grubbs are identified in the report, but were not provided.

acted against Aleman because Aleman is Hispanic.[17]  Third, and relatedly, the street fight or

disturbance was between Hispanics and at least one African American.  It does not appear that

Berchtold used any force against, or had any confrontations with, the Hispanic suspects.  For

purposes of this case, Berchtold's treatment of the Hispanic individuals is what is probative.[18]

Fourth, the situation that Berchtold confronted was different than this case.  The January 2010

incident involved a street fight with multiple persons, which increases the risk of physical

confrontation.  Accordingly, the 2010 complaint does not aide Aleman.

The December 2009 citizen complaint was made by a Hispanic male, Sonny Cardoza.

According to the report, Ronk and Berchtold were attempting to arrest Cardoza pursuant to a

felony arrest warrant and violation of a domestic violence restraining order.  See Thompson Dec.

Ex. 7.  The officers contended that Cardoza ran from them and physically resisted arrest.  See id.

Cardoza contends that the officers approached him with their guns drawn, he turned around and

dropped to his knees, and then the officers started beating him for no reason.  See id.

The December 2009 incident is closer to the events of this case in that there is a conflict

about a possible attempt to escape and the officers were acting against a Hispanic male.

However, like the January 2010 incident, the full report, including witness statements, analyses,

and conclusions, are not provided.  Without the full report, a full analysis cannot be done, which

limits the report's probative effect.  Further, the officers were in a felony arrest situation.  The

felony warrant was for a Health & Safety Code violation and Cardoza was also wanted for

violations of a domestic violence restraining order.  Attempting to arrest a potentially violent

felon pursuant to a warrant is a different dynamic than Aleman's situation.

In sum, Aleman has identified his protected class as being of the Hispanic race.

However, Aleman has not adequately shown that others who were similarly situated received

different treatment.  There has been an insufficient showing that the officers treated Aleman

---

[17]Depending on other incidents or statements, discriminatory actions by an officer against individuals who are not of the same race as a complainant may be probative.  However, pointing to a single dissimilar incident that involved an individual of a race different from both Aleman and Berchtold is insufficient.

[18]The Court further notes that the 2010 citizen complaint was filed against Berchtold, not Ronk.  Any probative value that the 2010 citizen complaint may have is limited to Berchtold.

differently because Aleman is Hispanic.  At best, what Aleman can point to are unreasonable actions of the officers in this case and the December 2009 citizen complaint involving the execution of a felony arrest warrant.  In both this case and the Cardoza citizen complaint, what is present is a disagreement about the reasonableness of police conduct combined with different racial identities.  At some point, the facts of a case along with multiple citizen complaints may be sufficient to support an Equal Protection claim.  However, the facts of this case, combined with the facts of the Cardoza citizen complaint, are insufficient and constitute only "colorable" evidence.  See Anderson, 477 U.S. at 249-50; Hardage, 427 F.3d at 1183.  Summary judgment on this cause of action is appropriate.

### 3.   Fourth Cause of Action – 42 U.S.C. § 1983 – Malicious Prosecution

*Defendants' Argument*

Defendants argue that summary judgment is appropriate for several reasons.  First, probable cause existed to arrest Aleman, which is an absolute defense to a malicious prosecution claim.  Second, there is no evidence that Defendants acted with malice.  Neither officer met or had any previous contact with Aleman, and neither officer had any ill will towards him.  Third, there is no evidence that the officers submitted false information or pressured the prosecutor to act contrary to independent judgment.  The prosecutor's independent judgment bars this claim.

*Plaintiff's Opposition*

Aleman argues that he was detained, arrested, incarcerated, and had formal charges brought against him.  The officers used excessive force against Aleman.  Ronk wrote a spurious, inaccurate, and dishonest report in an attempt to justify the egregious misconduct.  Ronk also testified for the government during the criminal proceedings.  Aleman's arrest, as well as Ronk's report, show the intent to deprive Aleman of his Fourth Amendment right against unlawful search and seizure.  The criminal proceedings ended in Aleman's favor after a contested hearing on the constitutionality of his seizure and arrest.  The circumstances of Aleman's detention, arrest, and incarceration indicate that the officers acted with malice.

*Legal Standard*

"Malicious prosecution consists of initiating or procuring the arrest and prosecution of

15

1   another under lawful process, but from malicious motives and without probable cause . . . .  The

2   test is whether the defendant was actively instrumental in causing the prosecution."  Sullivan v.

3   County of Los Angeles, 12 Cal.3d 710, 720 (1974).  Under 42 U.S.C. § 1983, a "criminal

4   defendant may maintain a malicious prosecution claim not only against prosecutors but also

5   against others—including police officers and investigators—who wrongfully caused his

6   prosecution."  Smith v. Almada, 640 F.3d 931, 938 (9th Cir. 2011); see Awabdy v. City of

7   Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004).  To maintain a § 1983 action for malicious

8   prosecution, a "plaintiff must show that the defendants prosecuted her with malice and without

9   probable cause, and that they did so for the purpose of denying her a specific constitutional

10  right."  Smith, 640 F.3d at 938; Awabdy, 368 F.3d at 1066.  Further, because the state tort

11  common law has been incorporated into the elements of a § 1983 malicious prosecution claim, a

12  plaintiff must generally show that the prior prosecution terminated in a manner that indicates

13  innocence, i.e. a favorable termination.  Awabdy, 368 F.3d at 1066-68.

14       A termination is "not necessarily favorable simply because the party prevailed in the prior

15  proceeding; the termination must relate to the merits of the action by reflecting either on the

16  innocence of or lack of responsibility for the misconduct alleged against him."  Sagonowsky v.

17  More, 64 Cal.App.4th 122, 128 (1998); see Casa Herrera, Inc. v. Beydoun, 32 Cal.4th 336, 341-

18  42 (2004).  "If the resolution of the underlying action leaves some doubt concerning plaintiff's

19  innocence or liability, it is not a favorable termination sufficient to allow a cause of action for

20  malicious prosecution."  Pattiz v. Minye, 61 Cal.App.4th 822, 826 (1998).

21       In a malicious prosecution action involving more than one charged offense, courts must

22  separately analyze each of the charges claimed to have been maliciously prosecuted.  See

23  Johnson v. Knorr, 477 F.3d 75, 84-85 (3d Cir. 2007); Posr v. Doherty, 944 F.2d 91, 100 (2d Cir.

24  1991).  That probable cause existed, or a conviction may have resulted, as to some charges does

25  not preclude a plaintiff for pursuing a claim based on those charges to which no probable cause

26  existed and to which there was a favorable termination.  See Holmes v. Village of Hoffman

27  Estates, 511 F.3d 673, 682 (7th Cir. 2007); Uboh v. Reno, 141 F.3d 1000, 1005 (11th Cir. 1998);

28  Crowley v. Katleman, 8 Cal.4th 666, 677-78 (1994); Silas v. Arden, 213 Cal.App.4th 75, 89

1   (2012).  Stated differently, simply because probable cause exists or a conviction results for at

2   least one charge does not necessarily preclude a malicious prosecution claim based on other

3   charges.  See Holmes, 511 F.3d at 682-83; Posr, 944 F.2d at 100; Crowley, 8 Cal.4th at 677-78.

4   *Discussion*

5   Aleman was booked by Ronk for violation of five statutes.  See Ronk Dec. ¶ 19; DUMF

6   18.  Although no clear evidence has been presented on these points, the Court will assume that

7   the prosecutor instituted a criminal prosecution for each of the five charged offenses and that

8   Aleman is basing his malicious prosecution cause of action on each of these five offenses.  As

9   such, the Court will assess each of the five charges against Aleman.  See Posr, 944 F.2d at 100.

10   With respect to the window tinting violation, the parties agree that the officers observed

11   a violation of Vehicle Code § 26708.  See JUMF 2.  Because the officers observed an actual

12   violation of § 26708, the officers had probable cause for this charge.  Since the absence of

13   probable cause is a necessary element, Aleman cannot maintain a malicious prosecution claim

14   based on the § 26708 charge.  See Smith, 640 F.3d at 938; Freeman v. City of Santa Ana, 68 F.3d

15   1180, 1189 (9th Cir. 1995).  Summary judgment on this malicious prosecution theory is

16   appropriate.  See id.

17   With respect to the remainder of the claims for violent resistence (Penal Code § 69),

18   possession of marijuana (Health & Safety Code § 11357), being under the influence of a

19   controlled substance (Health & Safety Code § 11550), driving under the influence (Vehicle Code

20   § 23152), there is apparently no genuine dispute that the prosecutor dismissed all of these

21   charges.  Although there is no direct evidence as to the precise reasons for the prosecutor's

22   dismissal, the charges apparently were dropped after the state court granted Aleman's Penal Code

23   § 1538.5 motion to suppress.  See PUMF 13; Thompson Dec. Ex. 8 (written state court decision

24   on Aleman's motion to suppress).

25   The motion to suppress order centered on the officers' entry into 3301 Mission Hills

26   Court.  See id.  The state court cited *Welsh v. Wisconsin*, 466 U.S. 740 (1984) as the relevant law

27   on warrantless entries into dwellings.  See id.  The state court then cited case law regarding

28   exceptions to the warrant requirement.  See id.  After analyzing the facts and law, the state court

granted the motion to suppress.  See id.  In relevant part, the state court explained:

> Here, there is no evidence of a violent crime connected [to] Mr. Aleman.  There is no evidence of any crime other than a nonjailable offense of an infraction of illegal tinted windows.  There is no evidence of Mr. Aleman speeding.  The officers' entire 'pursuit' of Mr. Aleman lasted 5 seconds.  There is no evidence of Mr. Aleman running away or that he in any way acknowledged the officers' presence or any statement by Officer Berchtold to stop.  There is no evidence of any attempt to 'escape' or any concern of 'destruction of evidence' or danger or aggressiveness by Mr. Aleman.
>
> There was no justifiable reason why the officers could not have simply rang the doorbell at 3301 Mission Hills Ct., requested entry to the residence and most likely subsequently cited Mr. Aleman for the infraction of [§ 26708(a)(1)].

Id.

All of the evidence relating to the remaining four charges (or at least evidence supporting critical elements thereof) appear to have been obtained after the officers entered the residence.  It is reasonable to conclude that the prosecutor dismissed the four charges because the critical evidence obtained after the officers entered the house was suppressed.  See id.  That is, the critical evidence that supported the non-tinting violations were obtained as a result of the officers' entry and thus, was suppressed as fruit of the poisonous tree.  See Segura v. United States, 468 U.S. 796, 804 (1984).

The exclusionary rule excludes reliable and probative evidence not because of a person's innocence, but rather to deter violations of the Fourth Amendment.  See California v. Greenwood, 486 U.S. 35, 44-45 (1988).  Courts have recognized that a dismissal based on the granting of a motion to suppress is generally not consistent with innocence.  See Handy v. Millville Police Dep't, 2013 U.S. Dist. LEXIS 101185, *9-*10 (D. N.J. July 16, 2013); Morgan v. Ramsey, 2013 U.S. Dist. LEXIS 31408, *20-*21 (N.D. Okla. Mar. 7, 2013); Carter v. Porter, 2011 U.S. Dist. LEXIS 20911, *48 n.22 (E.D. Ky. Mar. 1, 2011); Willis v. Mullins, 809 F.Supp.2d 1227, 1241 (E.D. Cal. 2011); Johnson v. Arroyo, 2010 U.S. Dist. LEXIS 26769, *12 (N.D. Ill. Mar. 22, 2010);  El Ranchito, Inc. v. City of Harvey, 207 F.Supp.2d 814, 823 (N.D. Ill. 2002); Martinez v. City of Schenectady, 761 N.E.2d 560, 564 (2001).  Without some indication that the suppressed evidence was somehow "untrustworthy," a granted suppression motion merely reflects that the police failed to comply with the Fourth Amendment, and a peace officer's failure to comply with the Fourth Amendment does not mean that a suspect was innocent or did

18

1    not actually engage in misconduct.[19]   See id.

2         Here, Aleman has argued that the charges were dismissed following the ruling on the

3    motion to suppress.  However, all of the critical evidence was suppressed because of Ronk and

4    Berchtold's warrantless entry.  The suppression ruling does not indicate Aleman's innocence,

5    rather it indicates only an unlawful entry by the officers.  Thus, Aleman has failed to show that

6    he obtained a favorable termination of the criminal charges that reflects his innocence.  Because

7    there was not a favorable termination for purposes of malicious prosecution, summary judgment

8    on these four malicious prosecution bases is appropriate.  See Awabdy, 341 F.3d at 1066; Handy,

9    2013 U.S. Dist. LEXIS 101185 at *9-*10; Morgan, 2013 U.S. Dist. LEXIS 31408 at *20-*21;

10   Carter, 2011 U.S. Dist. LEXIS 20911 at *48 n.22; Willis, 809 F.Supp.2d at 1241; Johnson, 2010

11   U.S. Dist. LEXIS 26769 at *12; El Ranchito, 207 F.Supp.2d at 823; Sagonowsky, 64

12   Cal.App.4th at 128; Pattiz, 61 Cal.App.4th at 826.

13        **4.        Fifth Cause of Action – 42 U.S.C. § 1983 – Conspiracy**

14        *Defendants' Argument*

15        Defendants argue that summary judgment is appropriate because there is no evidence of a

16   meeting of the minds to violate Aleman's rights.  The officers each deny any agreement between

17   them existed, and there were no discussions between the officers to violate Aleman's rights.

18        *Plaintiff's Opposition*

19        Aleman argues there is circumstantial evidence of a conspiracy.  He was arrested without

20   probable cause, and both officers used excessive force.  The officers acted together and in

21   concert, and Ronk's offense report contains falsehoods that mischaracterized the encounter.

22        *Legal Standard*

23        A conspiracy is "a combination of two or more persons who, by some concerted action,

24   intend to accomplish some unlawful objective for the purpose of harming another . . . ."   Vieux

25   v. East Bay Reg'l Park Dist., 906 F.2d 1330, 1343 (9th Cir. 1990).  A plaintiff may seek recovery

26

27        [19]This principle is illustrated by the marijuana possession charge.  Ronk found marijuana in the back of the
     patrol vehicle, and Aleman admitted the marijuana was his.  See JUMF's 8, 9, 10.  Thus, Aleman admits to
28   misconduct and to guilty behavior.  However, because the officers did not comply with the Fourth Amendment, the
     marijuana was suppressed and the charge dismissed.  Such a dismissal is due to a "technical reason," not to innocent
     conduct by Aleman.  See Carter, 2011 U.S. Dist. LEXIS 20911 at *48 n.22.

1   for a conspiracy under 42 U.S.C. § 1983.  See Klingele v. Eikenberry, 849 F.2d 409, 413 (9th

2   Cir. 1988).  The elements of a conspiracy cause action under § 1983 are: "(1) the existence of an

3   express or implied agreement among the defendant officers to deprive [the plaintiff] of his

4   constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."

5   Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010); Ting v. United States, 927 F.2d 1504, 1512

6   (9th Cir. 1991).  The agreement or "meeting of the minds" between the defendants "need not be

7   overt, and may be inferred on the basis of circumstantial evidence such as the actions of the

8   defendants."  Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); Mendocino

9   Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).  Without an actual

10  deprivation of a constitutional right, there is not liability for conspiracy under § 1983.  See San

11  Diego Police Officers' Ass'n v. San Diego City Emples. Ret. Sys., 568 F.3d 725, 740 (9th Cir.

12  2009); Young v. County of Fulton, 160 F.3d 899, 904 (2d Cir. 1998); Woodrum v. Woodward

13  County, 866 F.2d 1121, 1127 (9th Cir. 1989).

14          *Discussion*

15          The Complaint indicates that Aleman's conspiracy claim is based on an arrest without

16  probable cause, malicious prosecution, and excessive force.  See Complaint ¶ 77.

17          As discussed above, the Court has found that Aleman's Fourth Amendment false arrest

18  claim is not viable because probable cause existed for his arrest.  Because there was no

19  constitutional violation with respect to probable cause, there can be no § 1983 conspiracy

20  liability for false arrest.  See San Diego, 568 F.3d at 740; Young, 160 F.3d at 904; Woodrum,

21  866 F.2d at 1127.  Summary judgment on the false arrest § 1983 conspiracy claim is proper.

22          Also as discussed above, the Court has determined that there is not an actionable § 1983

23  malicious prosecution cause of action.  Without an actionable malicious prosecution cause of

24  action, there is no viable § 1983 conspiracy to maliciously prosecute claim.  See San Diego, 568

25  F.3d at 740; Young, 160 F.3d at 904; Woodrum, 866 F.2d at 1127; Schwartz v. Adams County,

26  2010 U.S. Dist. LEXIS 66435, *22 (D. Idaho July 1, 2010).

27          With respect to excessive force, the officers have declared that there was no agreement to

28  violate Aleman's civil rights.  See DUMF 22.  Defendants did not move for summary judgment

20

on the issue of excessive force.  The only reason for not moving on the excessive force claim is a recognition that there is a genuine issue of disputed material fact.  Consequently, the parties have not submitted particularly detailed facts regarding the use of force.  However, the evidence that has been presented indicates that the officers said nothing to Aleman as he was walking to the house, Aleman calmly walked into the house, the officers forced entry and then proceeded to attack and handcuff Aleman.  See Aleman Depo. 12:6-13:16, 22:11-20, 26:1-27:14, 29:22-30:7.  The evidence indicates that the officers worked together and in tandem against Aleman from the moment the officers pulled in the driveway to the moment Aleman was handcuffed, but does not indicate that the officers' entry and use of force were reasonable.  Cf. Sims v. Stanton, 706 F.3d 954, 961 (9th Cir. 2013) (finding unconstitutional the warrantless entry into curtilage when only crime at issue was misdemeanor obstruction offense under California Penal Code § 148).  Viewing the evidence in the light most favorable to Aleman, and accepting that there is sufficient evidence for a jury to find that excessive force was used, the circumstances surrounding the use of force suggest an unstated agreement by the officers.  See Crowe, 608 F.3d at 440 (holding that agreement need not be overt and can be inferred from the circumstances and defendants' actions).  Summary judgment on this conspiracy theory is inappropriate.

## **5.** *Monell* **Liability**

The City argues that summary judgment on all *Monell* claims is appropriate because there is no evidence that any injuries were caused by a policy, practice, or custom.  Aleman's opposition states that he has chosen not to assert a *Monell* claim against the City.  See Opposition at 21:6-11.  All of the causes of action alleged against the City are based on 42 U.S.C. § 1983 and thus, are *Monell* claims.  See Monell v. Department of Soc. Servs., 436 U.S. 658 (1978).  In light of the City's arguments and Aleman's express abandonment of *Monell* claims, summary judgment in favor of the City on all claims is appropriate.

## **CONCLUSION**

Defendants move for summary on four of the five causes of action against them.  As to the second cause of action for false arrest, summary judgment is appropriate because the officers

had probable cause to arrest Aleman for violation of Vehicle Code § 26708(a)(1).

As to the third cause of action for violation of equal protection, summary judgment is appropriate because Aleman's evidence of discriminatory disparate treatment is merely colorable.

As to the fourth cause of action for malicious prosecution, summary judgment is appropriate because there was probable cause under Vehicle Code § 26708, and a favorable termination of the remaining four criminal charges was not demonstrated.

As to the fifth cause of action for conspiracy, summary judgment for conspiracy to falsely arrest and maliciously prosecute is appropriate because there was no false arrest and no actionable malicious prosecution.  Summary judgment for conspiracy to use excessive force is not appropriate because the factual circumstances indicate a meeting of the minds by the officers.

Finally, because Aleman has stated that he is abandoning his *Monell* claims, summary judgment in favor of the City on all claims is appropriate.

### **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' motion for summary judgment is:

1.      GRANTED as to the second, third, and fourth causes of action;

2.      GRANTED as to the fifth cause of action for conspiracy claims based on false arrest and malicious prosecution;

3.      DENIED as to the fifth cause of action for conspiracy claims based on excessive force; and

4.      GRANTED as to all claims alleged against Defendant the City of Bakersfield.

IT IS SO ORDERED.

Dated:   ___July 30, 2013___                    _____

SENIOR  DISTRICT  JUDGE